IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID SARGENT, B55513, ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> KIM BUTLER, Warden, Menard Correctional ) <br> Center, ) <br> ) <br> Respondent. ) | No. 14 C 7629 <br><br> Judge Joan H. Lefkow |

## **OPINION AND ORDER**

David Sargent ("Sargent"), currently in the custody of Kim Butler, Warden of Menard Correctional Center, is serving a sixty-year sentence for first-degree murder, a thirty-year consecutive sentence for armed robbery, and a thirty-year concurrent sentence for home invasion. Sargent has filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. §§ 2254. For the reasons stated below, his petition is denied.

## **BACKGROUND**

Sargent was charged along with codefendants Dedric Hentz, Michael Perkins, and two other individuals for the armed robbery and homicide of Scott Tisdale. The evidence presented against Sargent at trial included eyewitness testimony by Scott's father, James Tisdale ("Tisdale"), who was present during the robbery and identified Sargent as holding a shotgun that killed his son. Lorie Bethany, Perkins' then-girlfriend, also implicated Sargent by placing him at the scene of the murders in the company of the codefendants, and Sargent's own written confession was received in evidence. Sargent testified in his own defense and called an alibi

witness. The evidence is summarized in the opinion of the Illinois Appellate Court, *People* v. *Sergeant* [*sic*], 326 Ill. App. 3d 974, 762 N.E. 2d 518 (2001), and will not be repeated here.

The Illinois Appellate Court affirmed the convictions but remanded to the trial court to provide a sufficient basis under the Illinois Unified Code of Corrections for imposing consecutive sentences. *See id.* at 984, 762 N.E.2d at 527. On remand, the trial court provided the needed factual support and reimposed the same sentence. The judgment was affirmed on appeal, and Sargent's petition for leave to appeal ("PLA") was denied on March 24, 2004. While Sargent's second direct appeal was pending, he filed a *pro se* postconviction petition. On January 28, 2011, the trial court dismissed the petition. The appellate court affirmed, and Sargent's PLA was denied on September 25, 2013. On September 29, 2014, Sargent filed the instant petition for a writ of habeas corpus.[1]

## LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act permits a federal court to grant a petition for writ of habeas corpus for any claim adjudicated on the merits in state court if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1)–(2). A state court's decision is contrary to clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth [by the Supreme Court]," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result

---

[1] Respondent's objections to timeliness of the petition were withdrawn.

opposite to [it]." *Bell v. Cone*, 543 U.S. 447, 452–53, 125 S. Ct. 847, 160 L.Ed. 2d 881 (2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 405, 120 S. Ct. 1495, 146 L.Ed. 3d 389 (2000)). For purposes of habeas relief, a state court's decision is considered reasonable so long as "fair-minded jurists could disagree" on the outcome. *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S. Ct. 2140 (2004); see also *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002) ("A state court decision must be more than incorrect from the point of view of the federal court ... which means something like lying well outside the boundaries of permissible differences of opinion."); *Schultz v. Page*, 313 F.3d 1010, 1015 (7th Cir. 2002) ("The state court decision is reasonable if it is 'minimally consistent with the facts and circumstances of the case.' " (quoting *Schaff v. Snyder*, 190 F.3d 513, 523 (7th Cir. 1999)). A *pro se* habeas petition, however, must be liberally construed. *Frazier v. Varga*, 843 F.3d 258, (7th Cir. 2016) (stating that "*pro se* habeas petitions are 'entitled to a liberal construction'") (quoting *Perruquet v. Briley*, 390 F.3d 505, 512 (7th Cir. 2004)).

## ANALYSIS

Sargent brings 31 claims, of which only three need to be addressed here[2]: Claim 1, that he was denied a fair trial because the trial court gave an improper jury instruction regarding how

---

[2] The following additional claims were asserted, including those raised in an amendment to his petition which added 8 claims to the 23 original claims (dkt. 14):

(3) That the trial court reviewing the postconviction petition erred by failing to take judicial notice of Sargent's supplemental claims (Claim 3) (Pet. at 42-43: Ground 2).

(4) That on direct appeal the appellate court violated Sargent's due process rights by failing to overturn the trial court based on Claim 1 (Claim 4) (Pet. at 47: Ground 3).

(6) That the indictment did not provide sufficient notice to Sargent that he could be convicted based on an accountability theory (Claim 6) (Pet. at 59-60: Ground 5).

(7) That Sargent's due process rights were violated because the indictment was constructively amended (Claim 7) (Pet. at 61: Ground 6).

(8) That Sargent was denied a fair trial because the state pursued inconsistent theories before his jury and Hentz's jury (Claim 8) (Pet. at 64: Ground 6).

(9) That the prosecutor improperly relied upon perjured testimony and hearsay to obtain the indictment (Claim 9) (Pet. at 65-66: Ground 7).

(10) That the Sargent's rights under the Confrontation Clause were violated because he was not allowed to cross examine Detective Przepiora when he testified before the grand jury (Claim 10) (Pet. at 67-68: Ground 8).

(11) That Sargent's due process rights were violated because the State knowingly elicited hearsay and perjured testimony from Detective Przepiora (Claim 11) (Pet. at 69: Ground 9).

(12) That the prosecutor engaged in prosecutorial misconduct by misleading the jury during opening statement and closing argument (Claim 12) (Pet. at 70: Ground 9).

(13) That the prosecutor withheld an exculpatory description of one of the men who broke into Tisdale's residence (Claim 13) (Pet. at 71: Ground 10).

(14) That the trial court erred by indicating to the jury the court's belief that Sargent made the written statements implicating himself (Claim 14) (Pet. at 72-73: Ground 11).

(15) That Sargent's constitutional rights were violated because during voir dire the trial court inquired only from select prospective jurors whether they would give additional credence to testimony presented by police officers or government officials (Claim 15) (Pet. at 74-77: Grounds 12 and 13).

(16) That Sargent's constitutional rights were violated at trial because the court vouched for the credibility of the prosecutor's statements. (Claim 16) (Pet. at 76: Ground 12).

(17) That Sargent was denied his rights under the Confrontation Clause when Detective Bolan and ASA Rogers testified as to statements by Jennings, Michael Thornhill, Jerry Johnson, and Teresa Travis (Claim 17) (Pet. at 79-81: Ground 14).

(18) That the trial court erred by admitting the testimony of Detective Bolan and ASA Rogers because it was misleading and contained hearsay (Claim 18) (Pet. at 82: Ground 15).

(19) That Sargent received ineffective assistance of counsel because his trial counsel did not object to the testimony of Detective Bolan and ASA Rogers (Claim 19) (Pet. at 85-88: Grounds 16 and 17).

(20) That Sargent received ineffective assistance of counsel because his trial counsel did not make Jennings, Michael Thornhill, Jerry Johnson, and Teresa Travis available at trial for examination (Claim 20) (Pet. at 89: Ground 18).

(21) That Sargent received ineffective assistance of counsel because his trial counsel was deceived when the state pursued inconsistent legal theories not identified in the indictment (Claim 21) (Pet. at 90: Ground 19).

(22) That Sargent's Confrontation Clause rights were violated because he was not able to cross-examine Hentz and Perkins (Claim 22) (Pet. at 92: Ground 20).

(23) That Sargent received ineffective assistance of counsel because his trial counsel failed to conduct a proper pretrial investigation or gather exculpatory evidence (Claim 23) (Pet. at 95: Ground 21).

(24) That the prosecutor engaged in a character assassination of Sargent and made improper and misleading statements during opening statement and closing argument (Claim 24) (A. Pet. at 10-11: Ground 22).

to evaluate eyewitness identification testimony, preventing the jury from properly evaluating Tisdale's testimony (Pet. at 34-39); Claim 2, that he received ineffective assistance of counsel on direct appeal because his appellate counsel failed to raise Claim 1 (Pet. at 40-41); and Claim 5, that his confession was involuntarily given and inadmissible in evidence (Pet. at 48-58).

I. Procedurally Defaulted Claims

Respondent argues that most of Sargent's claims are procedurally defaulted. A petitioner's claim is procedurally defaulted if (1) "the state court decline[d] to address a petitioner's federal claims because the petitioner did not meet state procedural requirements," or (2) the petitioner failed to "exhaust his remedies in state court before seeking relief in federal court [by giving] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Snow v. Pfister*, 880 F.3d 857, 864 (7th Cir. 2018) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)).

---

(25) That Sargent received ineffective assistance of counsel because the state did not disclose exculpatory evidence during discovery (Claim 25) (A. Pet. at 33: Ground 23).

(26) That Sargent received ineffective assistance of counsel because his trial counsel failed to interview and subpoena certain eyewitnesses and failed to move for a mistrial (Claim 26) (A. Pet. at 36-39: Ground 24).

(27) That the State engaged in prosecutorial misconduct and denied his counsel information needed to offer effective assistance by failing to disclose exculpatory evidence (Claim 27) (A. Pet. at 40-42: Ground 25).

(28) That Sargent's due process and equal protection rights were violated because he received a disproportionate sentence in comparison to his co-defendants (Claim 28) (A. Pet. at 43-45: Ground 26).

(29) That Sargent received ineffective assistance of counsel because his appellate counsel failed to raise the sentencing disparity argument on direct appeal (Claim 29) (A. Pet. at 44: Ground 26).

(30) That Sargent received ineffective assistance of counsel at trial because of the cumulative effect of his mistakes by his trial counsel (Claim 30) (A. Pet. at 46-50: Ground 27).

(31) That Sargent received ineffective assistance of counsel on appeal because of the cumulative effect of his mistakes (Claim 31) (A. Pet. at 51-52: Ground 28).

5

In his PLA on direct appeal, Sargent argued (1) that he was denied a fair trial because the trial court admitted hearsay testimony from Bethany as to statements Hentz and Perkins made to her (R. Ex. V. at 5, 7); (2) that he received ineffective assistance of counsel at sentencing because his counsel failed to properly evaluate his criminal history (R. Ex. V. at 5, 8-9); (3) that the trial court erred by imposing a consecutive sentence (R. Ex. V. at 5, 10-12); (4) that he received ineffective assistance of counsel at his resentencing hearing because his counsel did not argue the proper sentencing factors (R. Ex. V. at 5, 12-15); (5) that the Illinois Appellate Court erred allowing his appellate counsel's motion to withdraw (R. Ex. V. at 5, 15-17); and (6) that the trial court erred at his resentencing by failing to make a finding as to whether the offenses were committed in a single or separate course of conduct (R. Ex. V. at 5, 17-19). None of the claims in the instant petition falls within the scope of the claims in his PLA on direct appeal.

Sargent argues that his first issue in his PLA relating to hearsay implicitly raises his claim here that his Confrontation Clause rights were violated (Claim 22). A claim based on an error of state evidentiary law such as the hearsay rule, however, is not the same as one asserting that the petitioner's federal constitutional rights were violated. To avoid procedural default, a petitioner must "fully and fairly present his federal claims to the state courts[.]" *U.S. ex rel. Kirk v. Terhune*, 2003 WL 1860513, at *3 (N.D. Ill. Apr. 10, 2003) (quoting *Chambers v. McCaughtry*, 264 F.3d 732, 737 (7th Cir. 2001). "Fair presentment requires the petitioner to give the state courts a meaningful opportunity to pass upon the substance of the claims later presented in federal court," which means that "[t]he petitioner must have placed both the operative facts and the controlling legal principles before the state courts." *Id.,* quoting *Chambers*, 264 F.3d at 737.[3]

---

[3] Even if Sargent had exhausted his state court appellate process in regard to Claim 5, it lacks any merit. *See Brown v. Gaetz*, 2015 WL 1976366, at *6 (N.D. Ill. May 1, 2015) (stating that "[r]elevant factors in determining whether a violation of the Confrontation Clause constitutes harmless error include whether the testimony was

Sargent argued in his PLA on direct appeal that the trial court erred because the hearsay was admitted. In his PLA Sargent argued that the lower courts committed plain error and cites state court rules and case law. (R. Ex. V at 7). He cited federal law only in regard to the plain error standard of *United States v. Olano*, 507 U.S. 725 (1993). He did not point to any federal law or make any allegations in his PLA that would suggest that his federal Confrontation Clause rights were at issue.[4] Thus, none of Sargent's claims in his instant petition were raised in his PLA on direct appeal.

In his PLA on appeal of his postconviction petition, Sargent argued (1) that the trial court considering his postconviction petition erred by not considering his amended claims; (2) that he was denied a fair trial because an improper instruction was given regarding the factors to consider when evaluating eyewitness identification testimony; (3) that he received ineffective assistance of counsel on appeal because his counsel did not challenge the jury instruction; (4) that the Illinois Appellate Court erred by upholding the improper jury instruction; (5) that the "identification process" in regard to Sargent was unfair because of a "tainted photo-array" and a "highly biased and suggestive lineup procedure"; and (6) that there is new evidence that shows that his written statement was coerced and not voluntary. (R. Ex. GG).

The only claims in the instant petition that fall within the scope of the claims in his PLA on his postconviction appeal are Claim 1, that he was denied a fair trial because the trial court

---

cumulative; the presence of corroborating or contradicting testimony of the witness; the extent of cross-examination permitted; and the overall strength of the prosecution's case"). The statements made by Hentz and Perkins were corroborated by other evidence in the case.

[4] To the extent that the instant petition in the instant action could be construed to raise a claim based on the hearsay objection, the claim would still be procedurally defaulted. The Illinois Appellate Court found on direct appeal that the claim had been waived based on Illinois procedural rules. *People v. Sergeant*, 762 N.E.2d 518, 525 (Ill. App. Ct. 2001).

gave an improper jury instruction regarding how to weigh eyewitness identification testimony; Claim 2, that his appellate counsel on direct appeal failed to raise Claim 1; and Claim 5, that his written statement was involuntary and inadmissible. The remaining claims are therefore procedurally defaulted because they were not presented in the state court system through one complete round of the appellate process. *Snow*, 880 F.3d at 864 (stating that "[t]o exhaust state remedies in the Illinois courts, the prisoner must include his claims in a petition for leave to appeal to the Illinois Supreme Court"); *White v. Godinez*, 192 F.3d 607, 608 (7th Cir. 1999) (stating that "[i]n *Boerckel*, the Supreme Court held that failure to pursue a discretionary appeal to the highest court of the state constitutes a procedural default that bars resort to federal habeas corpus relief" and that "the procedural default rule announced in *Boerckel* applies with equal force in a case, such as this one, on collateral review").

A procedural default can, however, be "excused … where the petitioner demonstrates either (1) cause for the default and actual prejudice or (2) that failure to consider the claims will result in a fundamental miscarriage of justice." *Snow*, 880 F.3d at 864 (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)) (internal quotations omitted). Sargent has not presented cause for failing to raise any of his defaulted claims and thus fails to show that his default should be excused. As such, there is no need for the court to address actual prejudice. Finally, he has not demonstrated a fundamental miscarriage of justice.

II.  Jury Instruction (Claims 1 and 2)

Sargent argues that he was denied a fair trial because the trial court gave an improper jury instruction regarding the factors to consider when evaluating eyewitness identification testimony such that the jury was not able to properly evaluate Tisdale's identification testimony. At trial, the court gave pattern IPI Criminal Jury Instruction No. 3.15 regarding the relevant factors but

8

used "or" between each factor, implying that a single factor could be decisive. *See People v. Sargent*, 2013 IL App (1st) 110446-U, ¶ 17-19. The appellate court addressed the issue on the postconviction appeal, acknowledging that under *People v. Herron*, 215 Ill.2d 167, 191 (2005), the trial court committed error by giving the improper version of the instruction. *Id.* The court ruled, however, that Sargent could not show prejudice, *i.e.*, that there was "a serious risk that the jurors incorrectly convicted the defendant because they did not understand the applicable law, so as to severely threaten the fairness of the trial." *Id.* (internal quotation marks omitted). Unlike the facts in *Herron*, where only one witness identified the defendant, and the person identified did not fit the physical description of the perpetrator given by another witness, here the court pointed out that the evidence against Sargent was "overwhelming," including Sargent's own confession, two other witnesses who placed him at the scene of the murder, and the weakness of Sargent's claimed alibi. *Id.* Thus, it concluded that "any error in giving the erroneous version of IPI Criminal No. 3.15 was harmless as a result." *Id.*

In any event, the error was one of state law which cannot form the basis for federal habeas relief. *King v. Pfister*, 834 F.3d 808, 814 (7th Cir. 2016) (stating that "[a] federal court may not issue the writ on the basis of a perceived error of state law") (internal quotation marks omitted) (quoting *Bates v. McCaughtry*, 934 F.2d 99, 102 (7th Cir. 1991)). Sargent has not pointed to any clearly established federal law that holds that the instruction as given at his trial violates federal constitutional rights. Even if the claim were cognizable, the Illinois Appellate Court's determination of the facts was not unreasonable in light of the evidence presented in the State court proceeding. 28 U.S.C. §§ 2254(d)(1)–(2).[5]

---

[5] Sargent has not challenged the testimony by Bethany identifying him as one of the home invaders she observed taking part in the crime. Sargent merely argues in his petition that Tisdale's identification testimony was unreliable and that the instruction misled the jury in regard to the evaluation of Tisdale's testimony. (Pet. at 34-39).

Sargent also argues that his appellate counsel was ineffective for failing to raise Claim 1. *See Stewart v. Butler*, 2016 WL 7116581, at *4–5 (N.D. Ill. Dec. 6, 2016) (stating that "[t]o establish an ineffective assistance of counsel claim, Petitioner must demonstrate (1) deficient performance by counsel; and (2) prejudice."). Sargent has not shown that his counsel acted beyond the boundaries of effective assistance of counsel by failing to challenge a pattern instruction that was in general use at the time of his 1999 trial. *See Smith*, 598 F.3d at 384 (stating that "Pattern Jury Instruction 3.15 was codified in 1992 and remained in use until 2001" and that "[d]efense counsel did not act in an objectively unreasonable manner by not objecting to the use of an applicable pattern jury instruction"); *Sargent*, 2013 IL App (1st) 110446-U, ¶ 18 (stating that "[t]he evidence against defendant was overwhelming, and any error in giving the erroneous version of IPI Criminal No. 3.15 was harmless as a result"). But even if counsel's performance was substandard, the error does not implicate a federal constitutional right. Therefore, Claims 1 and 2 lack merit.

III. Voluntariness of Written Statement (Claim 5)

Sargent argues that his written statement was involuntary and inadmissible. After a suppression hearing, the trial court determined that Sargent's written statement was voluntary, therefore admissible. Sargent raised the issue in his postconviction PLA, arguing that his statement was coerced. *Sargent*, 2013 IL App (1st) 110446-U, ¶ 20. In determining the voluntariness of a confession, a court must consider "the totality of circumstances, including both the characteristics of the accused and the nature of the interrogation." *Hurt v. Wise*, 880 F.3d 831, 845 (7th Cir. 2018). If an evaluation of "those circumstances reveal[s] that the interrogated person's will was overborne, admitting the resulting confession violates the Fifth Amendment." *Id.*

10

At the suppression hearing, Detective John McDermott testified that he, along with his Detective Prezepiora and ASA Rogers, interviewed Sargent while he was in custody in an Indiana prison. (R. Ex. D. at E-32). ASA Rogers provided Sargent with *Miranda* warnings and Sargent consented to be interviewed without legal counsel. It was agreed that ASA Rogers would write down Sargent's oral statement and after review of the statement by Sargent, Sargent would place his signature at the bottom of each page of the statement. (R. Ex. D at E-36-38). Detective McDermott testified that throughout the interview, Sargent appeared to be "pretty calm" and did not "appear to be suffering from any form of mental fatigue or anxiety." (R Ex. D at E-43). Sargent did not testify at the suppression hearing and failed to impeach Detective McDermott's testimony.

Sargent now contends that he has newly discovered evidence consisting of information regarding alleged coercion of confessions procured by McDermott and Rogers in other cases. Sargent presented the evidence to the appellate court on his postconviction review. The court ruled that the evidence was not admissible, nor was it sufficient to warrant a new trial. *Sargent*, 2013 IL App (1st) 110446-U, ¶ 25. Two pieces of newly discovered evidence presented by Sargent were excluded due to his failure to comply with state court procedural rules. Such exclusions based on state law cannot form the basis for a federal habeas claim. Sargent also presented a newspaper article, which the court found to be insufficient. Sargent has not presented with his instant petition any evidence that he was personally subjected to coercive tactics. Thus, Claim 5 lacks any merit.

IV. Certificate of Appealability

Under 28 U.S.C. § 2253(c)(1)(B), Sargent may appeal from this final order denying relief under § 2254 if this court issues a certificate of appealability. A certificate of appealability may issue if the applicant has made a substantial showing of denial of a constitutional right. *Id.* § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L.Ed. 2d 542 (2000). For the reasons stated above, the court finds that Sargent has not made a showing of a substantial constitutional question for appeal, as reasonable jurists would not find this court's ruling debatable. *See Lavin v. Rednour*, 641 F.3d 830, 832 (7th Cir. 2011) ("To receive certification under § 2253(c), the prisoner must show that reasonable jurists would find the district court's assessment of the constitutional claim and any antecedent procedural rulings debatable or wrong." (citing *Slack*, 529 U.S. at 484–85 and *Davis v. Borgen*, 349 F.3d 1027, 1029 (7th Cir. 2003))). Accordingly, the court declines to issue a certificate of appealability.

**CONCLUSION AND ORDER**

For the foregoing reasons, Sargent's petition for writ of habeas corpus brought pursuant to 28 U.S.C. § 2254 is denied. The court declines to certify any issues for appeal.

Dated: September 21, 2018

                                                                                             _____
                                                                                              U.S. District Judge Joan H. Lefkow